UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL MARTINEZ, individually and on behalf of all others similarly situated, | ) ) ) ) | No. 16 CV 10389 |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Magistrate Judge Young B. Kim |
| CITIZEN'S TAXI DISPATCH, INC. & PATRICIA SHELTON, | ) ) ) ) | |
| Defendants. | ) ) | May 26, 2017 |

**MEMORANDUM OPINION and ORDER**

Daniel Martinez brings this purported collective and class action against Citizen's Taxi Dispatch, Inc. ("Citizen's Taxi") and its owner, Patricia Shelton (together, "Defendants"), alleging that they violated the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Illinois Minimum Wage Law ("IWML"), 820 ILCS 105/1, *et seq.*, and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/9, by failing to pay him overtime wages for time worked in excess of 40 hours in a workweek and by making unlawful deductions from his pay. Martinez also brings an unjust enrichment claim under Illinois common law, stemming from Defendants' requirement that its drivers pay work-related expenses. Before the court is Defendants' motion to dismiss the complaint under Federal

Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the following reasons, the motion is granted in part without prejudice and denied in part:

**Background**

For purposes of the current motion, the court accepts as true the following well-pleaded facts taken from Martinez's complaint, drawing all reasonable inferences in his favor. *See Berger v. Nat'l College Athletic Assoc.*, 843 F.3d 285, 289-90 (7th Cir. 2016). Citizen's Taxi provides general taxi services to individuals in and around DuPage County, Illinois, but its primary business involves contracts with local school districts to provide student transportation to and from schools in Wheaton and Warrenville, Illinois. (R. 1, Compl. ¶¶ 13-15.) According to Martinez, "the vast majority" of its business centers on school transportation contracts, and Citizen's Taxi negotiates these contracts directly with the school districts. (Id. ¶¶ 15, 30.)

As a condition of employment, Citizen's Taxi requires all of its drivers to sign a contract characterizing the drivers as independent contractors. (Id. ¶ 22.) Despite this characterization, Citizen's Taxi controls the manner in which its drivers perform their jobs by (among other things): requiring them to complete a qualification process and random drug testing; assigning them a set weekly schedule; denying them authority to refuse or negotiate their route assignments; disciplining them for not completing scheduled runs; requiring them to pick up and drop off students at precise times; and fielding client complaints. (Id. ¶¶ 24-25.) Citizen's Taxi also requires its drivers to rent its vehicles used to fulfill contracts

2

with school districts, and deducts the weekly rental fee from drivers' paychecks. (Id. ¶ 27.) Citizen's Taxi also deducts other expenses from its drivers' paychecks, including municipal tickets paid by the company and towing costs associated with retrieving cabs from discharged employees. (Id. ¶ 32.) Furthermore, drivers pay for car maintenance and repair costs, toll payments, and fuel costs. (Id. ¶ 33.)

Citizen's Taxi employed Martinez from February through September 2016, primarily to transport students under its school transportation contracts. (Id. ¶¶ 17-18.) During his employment Martinez worked a set schedule which typically did not change from week to week. (Id. ¶ 20.) During his employment Martinez worked in excess of 40 hours per week but did not receive overtime pay. Specifically, Martinez worked approximately 56 hours during the week of April 4, 2016, and approximately 54 hours during the week of May 16, 2016. (Id. ¶ 46.) He was not paid at a rate of one-and-a-half times his regular rate of pay for hours he worked in excess of 40 during either of those weeks. (Id.) According to Martinez, Citizen's Taxi's drivers "regularly" work more than 40 hours per week without being paid overtime compensation. (Id. ¶ 34.)

**Analysis**

Defendants move to dismiss Martinez's FLSA claim pursuant to Rule 12(b)(1), arguing that the FLSA does not apply to Citizen's Taxi and that this court therefore lacks subject matter jurisdiction to consider the claim. They also move to dismiss the FLSA claim and Martinez's state-law claims under Rule 12(b)(6). Although this court must address jurisdictional arguments first when they are

3

distinct from arguments that a complaint fails to state a claim on the merits, *see Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 967 n.1 (7th Cir. 2013), where a Rule 12(b)(1) motion presents an "indirect attack on the merits" of an FLSA claim, this court may treat the motion as if it arises under Rule 12(b)(6), *see Brown v. Club Assist Road Serv. U.S., Inc.*, No. 12 CV 5710, 2013 WL 5304100, at *4 (N.D. Ill. Sept. 19, 2013) (quoting *Peckmann v. Thompson*, 966 F.2d 295, 297 (7th Cir. 1992)).

Here, Defendants' Rule 12(b)(1) motion indirectly challenges the merits of Martinez's FLSA claim. Defendants argue that Citizen's Taxi is not subject to the FLSA's overtime pay requirements because it is not an "enterprise engaged in commerce" within the meaning of the FLSA's overtime provision, *see* 29 U.S.C. § 207(a)(1), or alternatively, because the FLSA excludes from overtime laws the employees of businesses operating taxicabs, *see id.* § 213(b)(17). The Supreme Court has clarified that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006). The FLSA does not define "enterprise engaged in commerce or in the production of goods for commerce" in 29 U.S.C. § 203(s) as a jurisdictional element of an FLSA claim. *See Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 33 (1st Cir. 2007); *Brown v. ABM Indus., Inc.*, No. 15 CV 6729, 2015 WL 7731946, at *3 (N.D. Ill. Dec. 1, 2015). Nor does the list of exemptions set forth in 29 U.S.C. § 213(b) suggest that a finding that a defendant qualifies for an exemption strips the court of jurisdiction to consider the claim. Within this district the court has repeatedly held that "[w]hether plaintiffs fall

4

within the protection of the FLSA is an issue regarding the merits of their claims, not the court's jurisdiction." *Rivera v. Heights Landscaping, Inc.*, No. 03 CV 6428, 2004 WL 434214, at *1 (N.D. Ill. March 5, 2004); *see also Brown*, 2015 WL 7731946, at *3; *Torres v. Pallets 4 Less, Inc.*, No. 14 CV 4219, 2015 WL 920782, at *3 (N.D. Ill. March 2, 2015); *Rivas v. Marcelo Hand Car Wash, Inc.*, No. 10 CV 1396, 2010 WL 4386858, at *1 (N.D. Ill. Oct. 28, 2010). After the Supreme Court decided *Arbaugh*, other circuits have reached the same conclusion.[1] *See, e.g., Chao*, 493 F.3d at 33 (holding that whether business meets annual dollar value requirements for enterprise coverage under FLSA is a nonjurisdictional merits question); *Fernandez v. Centerplate/NBSE*, 441 F.3d 1006, 1009 (D.C. Cir. 2006) (concluding that plaintiff's inability to prove particular element of FLSA claim does not require dismissal for lack of jurisdiction). Accordingly, the court will treat Defendants' motion to dismiss as if it were brought solely under Rule 12(b)(6). *See Brown*, 2015 WL 7731946, at *3.

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint, *see General Elec. Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997), rather than the merits of the case. Under Rule 8(a), all that is required to meet the sufficiency standard is "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

---

[1] Although it appears that the Seventh Circuit has not addressed whether such defenses in the FLSA context are jurisdictional or merits-based, it has held in other contexts that failure to meet a statute's definition "is not a defect of subject matter jurisdiction but an ordinary failure to meet a statutory requirement." *See Sapperstein v. Hager*, 188 F.3d 852, 855 n.1 (7th Cir. 1999).

(2007) (citing Fed. R. Civ. P. 8(a)) (quotation omitted). Under that standard "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements'" of the claim is insufficient, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555), because the factual allegations must give the defendants "fair notice of what the claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (quotation omitted). The allegations must also be facially plausible, meaning that they provide enough factual content to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In other words, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

**A.    The FLSA Claim**

Looking at Defendants' arguments regarding the applicability of the FLSA through the lens of Rule 12(b)(6), they first argue that dismissal is appropriate because there are insufficient allegations to support Martinez's assertion that Citizen's Taxi is an "enterprise engaged in interstate commerce" within the meaning of the FLSA. (R. 1, Compl. ¶ 10.) The FLSA imposes minimum and hourly overtime wage requirements with respect to employees who meet certain criteria. To satisfy the criteria for what is known as individual coverage, a plaintiff must allege that he is an employee "engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1); *Martinez v. Manolos Tamales, Inc.*, No. 14 CV 9686, 2015 WL 5144024, at *1 (N.D. Ill. Aug. 31, 2015). The test for individual

6

coverage is relatively strict, requiring that the employee "is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated, local activity." *Mitchell v. C.W. Vollmer & Co.*, 349 U.S. 427, 429 (1955). Here, Martinez does not argue that he is subject to individual coverage under the FLSA, but rather he invokes the broader avenue known as "enterprise coverage." *See Ortega v. Due Fratelli, Inc.*, No. 14 CV 6669, 2015 WL 7731863, at *3 (N.D. Ill. Dec. 1, 2015). Enterprise coverage applies to anyone who is employed in "an enterprise that has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person."[2] 29 U.S.C. §§ 203(s)(1)(A)(i), 207(a)(i); *Radulescu v. Moldowan*, 845 F. Supp. 1260, 1262 (N.D. Ill. 1994). In this district the court has interpreted enterprise coverage as not requiring a company to actually transport goods over state lines. *See Cardenas v. Grozdic*, No. 12 CV 292, 2012 WL 2359399, at *3 (N.D. Ill. June 20, 2012) (collecting cases). Instead, it is sufficient to allege that in the course of their employment a local company's employees "used tools and accessories that were manufactured in other states and transported to Illinois." *Id.*

Defendants accurately point out that none of the allegations in Martinez's complaint make any reference to Citizen's Taxi's drivers handling or transporting

---

[2] Enterprise coverage also requires that the enterprise has an annual gross volume of sales of at least $500,000, *see* 29 U.S.C. § 203(s)(1)(A)(ii), but Defendants do not contest that Martinez has properly alleged that Citizen's Taxi's annual gross sales exceed that amount, (R. 1, Compl. ¶ 11).

7

goods that have crossed interstate lines or otherwise establish a basis for enterprise coverage. (See R. 1, Compl. ¶ 10.) In fact, the allegations specify that Citizen's Taxi is in the business of providing transportation services "in and around DuPage County, Illinois." (Id. ¶ 13.) In response to Defendants' motion to dismiss, Martinez points to matters outside the complaint, including a deposition transcript and an affidavit that he attaches to his response brief, to support his enterprise coverage allegations. Based on these materials, Martinez asserts that he will be able to show that Citizen's Taxi meets the commerce requirements of enterprise coverage because "its drivers transport clients to and from O'Hare and Midway on a daily basis," and because they "transport packages on a near-daily basis" to and from interstate shipping facilities like the post office. (R. 24, Pl.'s Resp. at 6-7.) Defendants also attached an affidavit to their opening brief and a declaration to their reply brief in support of the motion to dismiss. (R. 12, Defs.' Mot. Ex. A; R. 28, Defs.' Reply, Ex. B.)

As an initial matter, neither party has addressed whether it is permissible for the court in reviewing a Rule 12(b)(6) motion to take into account facts that do not appear in Martinez's complaint, but only in exhibits to his response brief, or in materials Defendants submitted along with their briefs. Under Rule 12(d), this court cannot consider extrinsic documents that Defendants submit in support of a motion to dismiss without converting the motion to one for summary judgment—

8

something neither party has asked the court to do here.[3] *See* Fed. R. Civ. P. 12(d); *Torres*, 2015 WL 920782, at *3. However, the Seventh Circuit has made clear that a plaintiff has more flexibility in opposing a Rule 12(b)(6) motion and "may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove." *Geinosky v. City of Chicago*, 675 F.3d 743, 751 n.1 (7th Cir. 2012). In fact, "nothing prevents a plaintiff opposing dismissal from elaborating on the complaint or even attaching materials to an opposition brief illustrating the facts the plaintiff expects to be able to prove." *Defender Sec. Co. v. First Mercury Ins. Co.*, 803 F.3d 327, 335 (7th Cir. 2015); *see also Runnion v. Girl Scouts of Greater Chicago*, 786 F.3d 510, 529 n.8 (7th Cir. 2015). Accordingly, in analyzing the current motion the court declines to consider the exhibits Defendants attached to their briefs, but will take into account the materials Martinez submitted to shore up his complaint.

According to Martinez's response, he will be able to prove that he qualifies for the FLSA's overtime wage provisions under a theory of enterprise coverage because he will show that Citizen's Taxi drivers shuttle interstate travelers to and from airports on a daily basis and pick up packages from interstate shipping outposts on a near-daily basis. Martinez contends that such facts are sufficient to show that Citizen's Taxi has "employees handling, selling, or otherwise working on goods or materials that have been moved in" interstate commerce. *See* 29 U.S.C.

---

[3] Although the court is able to consider evidence Defendants submit in support of a motion to dismiss for lack of subject matter jurisdiction without converting the motion to one for summary judgment, *see Torres*, 2015 WL 920782, at *4 n.6, as explained above, the arguments Defendants raise speak to the merits of Martinez's case, not this court's jurisdiction to hear his claims.

9

§ 203(s)(1)(A)(i). As noted above, this court has interpreted enterprise coverage expansively. *See Radulescu*, 845 F. Supp. at 1264 (holding that "local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce"). Indeed, enterprise coverage has repeatedly been found to extend to local businesses whose local employees, in the course of their employment, use supplies that were manufactured out-of-state. *See, e.g., id.* at 1264-65 (enterprise coverage applied where local janitors used "pipes, faucets, nails, windows, door locks, light bulbs, grass seed, detergents, waxes, brooms, garbage bags, and salt for sidewalks" that were manufactured outside of Illinois); *Martinez*, 2015 WL 5144024, at *2 (finding complaint adequately stated claim for enterprise coverage "because it is a plausible inference that in the course of cooking and cleaning at tamale restaurants in Chicago, plaintiff handled goods that had moved in interstate commerce"); *Harris v. Skokie Maid & Cleaning Serv., Ltd.*, No. 11 CV 8688, 2013 WL 3506149, at *4-*5 (N.D. Ill. July 11, 2013) (concluding that local cleaning service qualified as FLSA enterprise because employees used "goods such as soaps, mops, detergents, and vacuum cleaners" that moved in interstate commerce (quotation and citation omitted)); *Cardenas*, 2012 WL 2359399, at *3 (concluding that enterprise coverage applied to local real estate rental company whose maintenance worker "used tools and accessories that were manufactured in other states and transported to Illinois in the performance of his employment duties" (collecting similar cases)). In fact, enterprise coverage has been interpreted so

broadly that "virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA." *Ortega*, 2015 WL 7731863, at *3 (internal quotation marks and citation omitted). Thus, allegations that Citizen's Taxi drivers routinely transport interstate passengers and packages from interstate points of departure, such as airports, are sufficient to make it plausible that enterprise coverage applies here.[4]

It should be pointed out that in contexts outside of the FLSA's enterprise coverage provision, courts have found that taxicab operations to and from airports or other interstate transportation hubs do not meet the statutory definitions of interstate commerce. For example, in a case cited by Defendants in support of their motion, *United States v. Yellow Cab Co.*, 332 U.S. 218, 230-31 (1947) (overruled on other grounds by *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984)), the Supreme Court held that transporting passengers and luggage to and from train stations with interstate service "is too unrelated to interstate commerce to constitute a part thereof within the meaning of the Sherman Act." Similarly, taxi rides to and from an airport have been found to fall outside the stream of commerce for purposes of analyzing whether municipal ordinances violate the commerce clause's restriction on imposing unreasonable burdens in interstate commerce. *See Executive Town & Country Servs., Inc. v. City of Atlanta*, 789 F.2d 1523, 1525 (11th

---

[4] It would also be reasonable to presume that Citizen's Taxi's drivers operate cabs that were manufactured out-of-state and shipped interstate, although Martinez does not raise this point in his response. *See Martinez*, 2015 WL 5144024, at *2 (noting that it would be implausible to assume a restaurant cook would not have handled goods that move in interstate commerce).

Cir. 1986). Courts have even expressed skepticism about intrastate taxi services from airports falling under the FLSA's individual coverage provision, although where those rides are prearranged from out-of-state they may qualify. *See Vancamper v. Rental World, Inc.*, No. 6:10-cv-209-Orl-19KRS, 2011 WL 1230805, at *3-4 (M.D. Fla. March 31, 2011). But Defendants have not cited any cases establishing that a local taxi company whose drivers routinely transport goods and passengers to and from interstate transportation hubs falls outside of the FLSA's enterprise coverage.

Defendants argue that because almost every business must use a mail service there would be no limit to enterprise coverage if shuttling packages suffices. (R. 28, Defs.' Reply at 7.) But Martinez does not argue that it is Citizen's Taxi's *use* of the mail that subjects it to enterprise coverage. Rather, he argues that pre-arranged trips transporting packages to and from interstate shipping outlets on behalf of customers is what qualifies as moving goods in interstate commerce. And as explained above, enterprise coverage extends the idea of commerce far more broadly than definitions used in other contexts. *See Ortega*, 2015 WL 7731863, at *3 (noting that enterprise coverage applies to virtually any business meeting the requisite volume of sales). For these reasons, the court disagrees with Defendants that Martinez fails to state a claim for enterprise coverage under the FLSA.

Defendants also argue that Martinez's complaint should be dismissed under 29 U.S.C. § 213(b)(17), which exempts "any driver employed by an employer engaged in the business of operating taxicabs." They argue that Martinez has

12

admitted that Citizen's Taxi drivers perform "general taxi services," (see R. 1, Compl. ¶ 15), and that the ways its drivers operate show that it qualifies as a taxicab business within the meaning of the exemption, (R. 28, Defs.' Reply at 7-9). The burden lies with Defendants to establish that the taxicab exemption applies, and that exemption must be construed narrowly against the employer. *See Wirtz v. Cincinnati, Newport & Covington Transp. Co.*, 375 F.2d 513, 515 (7th Cir. 1967); *McKinney v. Med Grp. Transp. LLC*, 988 F. Supp. 2d 993, 999 (E.D. Wis. 2013). Whether an employer qualifies for the taxicab exemption is a fact-intensive inquiry requiring the court to analyze, among other things, the "nature of the defendants' business, the working conditions of the drivers and the licensing scheme under which the defendants operate[.]" *Herman v. Brewah Cab, Inc.*, 992 F. Supp. 1054, 1060 (E.D. Wis. 1998). Accordingly, the exemption question is better left for the summary judgment or trial stage.

Finally, Defendants argue that Martinez's allegations fall short of the facial plausibility standard because he failed to sufficiently allege the compensation he received, his rate of pay, and the amount of wages owed.[5] (R. 12, Defs.' Mot. at 4-5.) But the two cases that they cite in support of this argument, *Hirst v. Skywest, Inc.*, 15 CV 02036, 2016 WL 2986978, at *6 (N.D. Ill. May 24, 2016), and *Hughes v.*

---

[5] Defendants direct the same argument toward Martinez's IMWL claim, stating that "[w]ithout an allegation as to the compensation paid to the plaintiff, there is no way to conclude that there is possible liability for violation of the IMWL." (R. 12, Defs.' Mot. at 5.) Because Defendants have not developed any separate argument regarding the IMWL claim, and because analysis under the FLSA and IMWL is generally co-extensive, there is no need to evaluate the sufficiency of that claim separately for purposes of the current motion. *See Hirst*, 2016 WL 2986978, at *7.

*Scarlett's G.P., Inc.*, 15 CV 5546, 2016 WL 4179153, at *3 (N.D. Ill. Aug. 8, 2016), discuss pleading standards in the context of minimum wage allegations rather than uncompensated overtime claims.[6] Those cases held that when a plaintiff claims to have been paid less than the applicable minimum wage, he must plead, at a minimum, what his hourly wage was or the total weekly compensation earned along with the hours worked. Those allegations were necessary to establish a facially plausible claim that the plaintiff had been paid less than a minimum wage in a given workweek. By contrast, Martinez is not alleging that Defendants failed to pay him the required minimum wage, but rather that they did not pay him the required one-and-a-half hourly wage for hours he worked over 40 hours in a week. While the level of detail necessary to state a claim for unpaid overtime wages is unsettled, to survive a motion to dismiss in this context it is enough for a plaintiff to "at least allege 'forty hours of work in a given work week as well as some uncompensated time in excess of the forty hours.'" *Labriola v. Clinton Enter. Mgmt., LLC*, No. 15 CV 4123, 2016 WL 1106862, at *3 (N.D. Ill. March 22, 2016) (quoting *Lucero v. Leona's Pizzeria, Inc.*, No. 14 CV 5612, 2015 WL 191176, at *2 (N.D. Ill. Jan. 13, 2015)); *see also Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 644 (9th Cir. 2014) ("[I]n order to survive a motion to dismiss, a plaintiff asserting a claim to overtime payments must allege that she worked more than forty hours in a

---

[6] In *Hughes*, the court also discussed an overtime complaint, but did not hold that a plaintiff must identify his wages or rate of pay to avoid dismissal of that claim, as opposed to a minimum wage claim. 2016 WL 4179153, at *3. The court dismissed the overtime claim because the plaintiffs failed to identify a single workweek in which they worked more than 40 hours without due compensation. *Id.*

given workweek without being compensated for the overtime hours worked during that workweek."). Here, Martinez specifically alleged that there were two weeks in which he worked more than 40 hours (56 and 54, respectively) and that he was not paid at a rate of one-and-a-half times his regular pay for time over 40 hours. (R. 1, Compl. ¶ 46.) Accordingly, Martinez's uncompensated overtime allegations are sufficiently detailed to survive Defendants' motion to dismiss. *See Labriola*, 2016 WL 1106862, at *3.

Although the court concludes that Martinez's submissions demonstrate that he will be able to make out a facially plausible FLSA claim, it is "axiomatic" that a plaintiff may not amend his complaint through a response brief. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Company*, 631 F.3d 436, 448 (7th Cir. 2011). Accordingly, the FLSA claim is dismissed without prejudice to Martinez amending his complaint to include the allegations he states support a finding of enterprise coverage under the FLSA.

**B.     The IWPCA Claim**

Defendants next argue that Martinez's IWPCA claim should be dismissed because he "has not pled the existence of an agreement to pay wages or the terms of any contract for wages or compensation." (R. 12, Defs.' Mot. at 5.) The IWPCA prevents employers from making any deductions from an employee's wages unless they are: "(1) required by law; (2) to the benefit of the employee; (3) in response to a valid wage assignment or wage deduction order; [or] (4) made with the express written consent of the employee, given freely at the time the deduction is made."

820 ILCS 115/9; *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1050 (7th Cir. 2016). But "wages" under the IWPCA is defined narrowly as "compensation owed an employee by an employer pursuant to an employment contract or agreement between the two parties." 820 ILCS 115/2; *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 570 (7th Cir. 2016) (noting that "the IWPCA exists to hold the employer to his promise under the employment agreement," not to force "the judiciary to graft new terms into an employment contract without the employer's consent"). "Thus, to state a claim under the IWPCA, a plaintiff must plead that wages or final compensation is due to him or her as an employee from an employer under an employment contract or agreement." *Deschepper v. Midwest Wine & Spirits, Inc.*, 84 F. Supp. 3d 767, 779 (N.D. Ill. 2015) (internal quotation and citation omitted). An agreement under the IWPCA need not be formal or in writing, but rather "requires only the manifestation of mutual assent." *Barker v. Atl. Pac. Lines*, No. 13 CV 1272, 2013 WL 4401382, at *8 (N.D. Ill. Aug. 14, 2013).

Here, as Defendants correctly point out, Martinez has not sufficiently alleged the existence of an agreement with Defendants under which he was entitled to compensation. Although he alleges that all Citizen's Taxi drivers had to sign contracts characterizing them as "independent contractors," (R. 1, Compl. ¶ 22), nowhere in the complaint does he describe or allude to an agreement regarding his compensation. Absent such allegations, Martinez has failed to state a claim under the IPWCA. *See Hughes*, 2016 WL 454348, at *4 (dismissing IWPCA claim without prejudice where plaintiffs identified contract characterizing them as independent

16

contractors but no compensation contract). Accordingly, Martinez's IWPCA claim is dismissed without prejudice.

## C. The Unjust Enrichment Claim

Finally, Martinez alleges that Defendants were unjustly enriched by their requirement that he and other drivers pay operating expenses, including weekly car rental payments, car maintenance and repairs, Illinois toll payments, and fuel costs. (R. 1, Compl. ¶¶ 33, 58.) Defendants' only argument with respect to this claim is that "unjust enrichment will stand or fall" with the related FLSA claim. (R. 12, Defs.' Resp. at 5-6); *see Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). But because Martinez may replead the FLSA claim, for now this argument gets them nowhere. It should be noted that the facts underlying Martinez's unjust enrichment claim pertain to the allegation that Defendants unjustly required him to pay aspects of their operating expenses, not to the unpaid overtime allegations relevant to his FLSA claim. An unjust enrichment claim can proceed alongside an FLSA claim "if the state common law claim seeks something other than what the FLSA can provide." *Richmond v. Advanced Pain Consultants, S.C.*, No. 15 CV 479, 2015 WL 4971040, at *3 (N.D. Ill. Aug. 18, 2015) (quotation and citation omitted). However, "when two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract." *Enger*, 812 F.3d at 571 (internal quotation and citation omitted). To the extent that Martinez chooses to re-plead his IWPCA claim alleging the existence of an agreement, he should bear in mind that if his "claim of unjust

enrichment challenges the terms of that contract, the doctrine of unjust enrichment has no application." *See id.* For now, the motion to dismiss is denied with respect to Martinez's unjust enrichment claim.

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss is denied with respect to counts II and IV, and granted without prejudice with respect to counts I and III.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**